FELICE JOHN VITI, Acting United States Attorney (#7007)
CARL D. LESUEUR, Assistant United States Attorney (#16087)
Attorneys for the United States of America
Office of the United States Attorney
111 South Main Street, Suite 1800
Salt Lake City, Utah 84111-2176
Telephone:  (801) 524-5682
Email:  carl.lesueur@usdoj.gov

---

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH

---

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> vs. <br><br> JOSEPH MORI, <br><br> Defendant. | Case No. 2:25-cr-225 |

**<u>UNITED STATES' MOTION FOR REVOCATION AND</u>**
**<u>MEMORANDUM OF LAW IN SUPPORT</u>**

TABLE OF CONTENTS

MOTION .................................................................................................................. 1
MEMORANDUM OF LAW ....................................................................................... 2
INTRODUCTION ..................................................................................................... 2
LEGAL STANDARDS .............................................................................................. 3
    I.    Hearing Procedures ......................................................................................... 3
    II.   Burden of Proof: Commission of Felony While on Pretrial Release .................. 4
    III.  Burden of Proof: Other Pretrial Release Condition Violations .......................... 4
    IV.  Danger to the Community Means the Risk of Further Criminal Activity, Not Merely Physical Violence ...................................................................................................... 5
PROFFERED FACTS ................................................................................................ 6
    I.    Defendant Indicted for a Felony Committed while on Supervised Release ....... 6
    II.   The Defendant Repeatedly Is Reminded of, and Acknowledges Release Conditions ........ 7
    III.  Defendant Continues Operating Exseedingly Group in Violation of Conditions .............. 8
        A.   Probable Cause that Exseedingly Group Is Operating in Violation of Multiple Federal Statutes ...................................................................................................... 8
        B.   Defendant Uses His Other Entities in the Exseedingly Scheme ................................. 10
            1.       Trusted Transportation Group, Inc. ........................................................ 10
            2.       Global Office Group ................................................................................ 11
        C.   Defendant Continues to Operate Exseedingly and the Related Entities After His Arrest ...................................................................................................... 11
ARGUMENT ............................................................................................................ 12
    I.    Defendant Committed Wire Fraud on Pretrial Release ................................... 12
    II.   Defendant Violated the Transaction Notification Requirements ..................... 13
    III.  There Is No Combination of Conditions that Can Prevent Defendant Committing More Crimes on Release ................................................................................................ 13
CONCLUSION ......................................................................................................... 14

## TABLE OF AUTHORITIES

**Cases**

*Donahue v. Wihongi*, 948 F. 3d 1177, 1189 (10th Cir. 2020)............................................................ 4

*Morrissey v. Brewer*, 408 U.S. 471, 489 (1978) .......................................................................... 3

*United States v. Accetturo,* 783 F.2d 382, 388–89 (3d Cir.1986)...................................................... 4

*United States v. Chimurenga*, 760 F. 2d 400, 405 (2d Cir. 1985) .................................................... 5

*United States v. Cook*, 880 F. 2d 1158, 1161 (10th Cir. 1989).......................................................... 6

*United States v. Delker,* 757 F.2d 1390, 1397–98 (3d Cir.1985)...................................................... 4

*United States v. Hurtado,* 779 F.2d 1467, 1479 (11th Cir.1985)...................................................... 4

*United States v. Madoff*, 586 F.Supp.2d 240, 252 (S.D.N.Y. 2009)................................................ 6

*United States v. Provenzano*, 605 F.2d 85, 95 (3rd Cir. 1979).......................................................... 6

*United States v. Reynolds*, 956 F.2d 192, 192 (9th Cir.1992) .......................................................... 6

*United States v. Torres*, 2023 WL 7391694, *3 (10th Cir. Nov. 8, 2023) ........................................ 6

*United States v. Williams,* 798 F. Supp. 34, 36 (D.D.C.1992) .......................................................... 4

*United States v. Winsor,* 785 F.2d 755, 756–57 (9th Cir.1986) ........................................................ 4

**Statutes**

18 U.S.C. § 3148.............................................................................................................. 4, 5

1

## MOTION

Under Rule 32.1 of the Federal Rules of Criminal Procedure and Section 3148(b)(1)(A) & (B), the United States moves that Defendant's pretrial release be revoked. There is probable cause to believe that, while on release, he has committed one or more Federal felonies while on pretrial release. Specifically, the United States alleges as follows:

- Joseph Mori violated conditions of his pretrial release imposed by the District of Utah by engaging in wire fraud, securities fraud, money laundering, and unlicensed money transmitting in violation of 18 U.S.C. §§ 1343, 1348, 1956(a)(1)(A)(i), 1956(a)(1)(B)(ii), and 1960. Defendant Mori used his entities, Trusted Transportation Group, Global Office Group, and Exseedingly Group to commit these offenses while on pretrial release in this District.

The United States further joins pretrial services' petition to revoke Defendant's pretrial release for the grounds set forth therein, and moves, pursuant to Rule 32.1 and Section 3143(g) that the Defendant be detained while any proceedings on the petition and this motion are pending.[1]

---

[1] It is anticipated, pursuant to prior agreement among the parties, the Defendant will admit allegations 2 and 4 of the petition at the hearing, and the United States will dismiss allegations 1 and 3.

## MEMORANDUM OF LAW

## INTRODUCTION

The indictment charges Defendant with an offense committed while already on supervised release. Now, while on pretrial release, there is clear and convincing evidence that he has violated the conditions of his pretrial release as indicated in the petition, and probable cause to believe he has continued to operate a fraudulent investment scheme involving millions of dollars.

The scheme solicits investments in his Exseedingly Group enterprise, previously operated under the name Crypto Calypso. He promises investors returns of more than 100% per year—often promising more than 100% per month. He tells investors he is using their money as security to help broker U.S. dollar purchases of cryptocurrency. He makes false representations about the volume of cryptocurrency transactions he is brokering. He falsely claims he is making a commission on millions and millions of dollars of cryptocurrency exchanges. And rather than simply hold the investors' funds as security, he actually used their funds to purchase vehicles, to pay his associates, and to pay other investors under the false guise of profits.

Despite warning from the United States that his businesses were not legitimate, despite court prohibitions on operating those companies, and despite requirements to report any transactions in excess of $5,000, Defendant has continued to operate this fraudulent scheme while on pretrial release. Since the imposition of these conditions, he has engaged in hundreds of undisclosed transactions exceeding the $5,000 threshhold, totaling millions of dollars. He has violated his release conditions nearly every day since he was granted release.

He clearly understands the reporting requirements and prohibitions. He initially moved to remove the restrictions on operating these businesses, but that motion was denied. That prohibition was repeated by Magistrate Judge Romero when he appeared before her. [REDACT PURSUANT TO 18 U.S.C. § 3153(c):] ███████████████████████████

███████████████████████████████████████

Worse, he has continued to solicit, accept, and transmit investments in his cryptocurrency exchange business, knowing he was prohibited from operating the business and knowing that the trezor wallet he reportedly used to conduct the business had been seized.

Accordingly, there probable cause to believe that the Defendant has engaged in violations of 18 U.S.C. §§ 1343 (wire fraud), 1957 (spending money laundering), and 1960 (unlicensed money transmitting) while on pretrial release. Further, the Defendant's history and character clearly demonstrate that there is no combination of conditions that can guarantee the safety of the public. He should be detained pending trial for the safety of the community.

## LEGAL STANDARDS

### I.     Hearing Procedures

The Federal Rules of Evidence do not apply at a revocation hearing pursuant to Rule 3148. Section 3148 does not explicitly exempt such hearings from the rules of evidence, as Section 3142(f) does for detention hearings. But Rule 1101(d)(3) of the Federal Rules of Evidence excepts "miscellaneous proceedings" from the rules, including "granting or revoking probation or supervised release" and "considering whether to release on bail or otherwise." Fed. R. Evid. Rule 1103(d)(3).

In addition, courts have generally indicated that revocation hearings should follow the procedures for detention hearings in Section 3142. *See Morrissey v. Brewer*, 408 U.S. 471, 489 (1978) ("[T]he [parole revocation] process should be flexible enough to consider evidence

3

including letters, affidavits, and other material that would not be admissible in an adversary criminal trial."); *United States v. Davis*, 845 F.2d 412, 414 (2d Cir. 1988) ("[W]e conclude that it is appropriate to look to the requirements of [18 U.S.C. Section 3142] for guidance as to the nature of the hearing under [18 U.S.C Section 3148].")

Section 3142 permits the defendant to present witnesses, to testify, and to cross-examine witnesses *who appear* at the hearing, and to present information by proffer. The United States may likewise proffer evidence or present hearsay, and the defendant has no right to cross-examine adverse witnesses who do not appear at the hearing. *See, e.g., United States v. Accetturo,* 783 F.2d 382, 388–89 (3d Cir.1986); *United States v. Winsor,* 785 F.2d 755, 756–57 (9th Cir.1986); *United States v. Delker,* 757 F.2d 1390, 1397–98 (3d Cir.1985). *See also United States v. Hurtado,* 779 F.2d 1467, 1479 (11th Cir.1985) (purpose of pretrial detention hearing is not to "rehash ... probable cause" but to provide opportunity for detainee to show no risk of flight or danger to community); *United States v. Williams,* 798 F. Supp. 34, 36 (D.D.C.1992) (same)

## II.    Burden of Proof: Commission of Felony While on Pretrial Release

Probable cause exists where the facts and circumstances indicated by "reasonably trustworthy information" are "sufficient to warrant a prudent man in believing the suspect had committed or was committing an offense." *Donahue v. Wihongi*, 948 F. 3d 1177, 1189 (10th Cir. 2020). If probable cause is shown that the defendant has committed a felony while on pretrial release, there arises a rebuttable presumption that no condition or combination of conditions will ensure that the person will not pose a danger to the safety of any other person or the community. 18 U.S.C. § 3148(b)(1). Unless that presumption is overcome, the person should be detained.

## III.    Burden of Proof: Other Pretrial Release Condition Violations

If violations of other conditions of release are demonstrated by clear and convincing evidence, the judicial officer shall enter an order of revocation. 18 U.S.C. § 3148(b)(1)(B).

Congress has indicated that this burden of proof in the bail reform act is intended to emphasize the "requirement that there be an evidentiary basis for the facts that lead the judicial officer to conclude that a pretrial detention is necessary. … [Thus], if the dangerous nature of the current offense is to be a basis of detention, then there should be evidence of the specific elements or circumstances of the offense."  S.Rep. at 22, 1984 U.S.Code Cong. & Adm.News, 3205. It has been observed that "clear and convincing evidence" means "something more than 'preponderance of the evidence,' and something less than 'beyond a reasonable doubt.' … To find danger to the community under this standard of proof requires that the evidence support such a conclusion with a high degree of certainty." *United States v. Chimurenga*, 760 F. 2d 400, 405 (2d Cir. 1985).

A person's release should be revoked and he should be detained only if the court finds clear and convincing evidence that either (1) there is no condition or combination of conditions of release that will assure the defendant will not pose a danger to the safety of any other person in the community, or (2) the person is unlikely to abide by any condition or combination of conditions of release. 18 U.S.C. § 3148(b)(2).

IV.     **Danger to the Community Means the Risk of Further Criminal Activity, Not Merely Physical Violence**

In considering the danger the defendant poses to the community, the court considers four factors under Section 3142(g): (1) the nature and circumstances of the offense; (2) the weight of the evidence; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger to any person or the community.

The Tenth Circuit has instructed, "The concern about safety is to be given a broader construction than the mere danger of physical violence. Safety of the community refers to the danger that the defendant might engage in criminal activity to the detriment of the community."

5

*United States v. Cook*, 880 F. 2d 1158, 1161 (10th Cir. 1989). That includes risk of either physical

or economic harm to another person. *See United States v. Torres*, 2023 WL 7391694, *3 (10th

Cir. Nov. 8, 2023) (unpublished) *citing United States v. Reynolds*, 956 F.2d 192, 192 (9th

Cir.1992) ("[D]anger may, at least in some cases, encompass pecuniary or economic harm.").[2]

## PROFFERED FACTS

The United States proffers the following facts in support of its motion, and in support of

the pending petition.

### I.    Defendant Indicted for a Felony Committed while on Supervised Release

The Defendant was previously convicted in the Southern District of New York of

wire fraud in violation of 18 U.S.C. § 1343. The felony information in that case charged him

with accepting advance fees for securing loans. Ex. 1, Felony Information. The victims—thirty

or so—never received the loans.  On April 20, 2022, Defendant was sentenced to 12 months and

a day. The Defendant was further sentenced to a period of three years of supervised release, and

to restitution of $354,410. Ex. 2 (Judgment).

The indictment in this case alleges that, while on that supervised release, the

Defendant committed a money laundering offense. ECF 1. He opened an account at Thread

Bank. Ex. 3 (Thread Bank statements.) The account had no significant activity until October

2023. At that time, the account received a wire of approximately $800,000 from the Utah Agency

for Legal Settlements. The incoming wire information identified the origin of the funds. The

---

[2] *See also United States v. Provenzano*, 605 F.2d 85, 95 (3rd Cir. 1979) ("[C]ourts are not confined in such cases to considering only harms involving an aura of violence.... [A] defendant's propensity to commit crime generally, even if the resulting harm would be not solely physical, may constitute a sufficient risk of danger[.]"); *United States v. Madoff*, 586 F.Supp.2d 240, 252 (S.D.N.Y. 2009) (citing cases); S. REP. NO. 225, 98th Cong., 1st Sess. 12 (1983), reprinted in 1984 U.S.C.C.A.N. 3182, 3195 ("[T]he language referring to the safety of the community refers to the danger that the defendant might engage in criminal activity to the detriment of the community. The committee intends that the concern about safety be given a broader construction than merely danger of harm involving physical violence.").

funds were not intended for the Defendant, but were intended for the plaintiffs in a personal injury lawsuit.  Someone pretending to represent the Plaintiffs fraudulently directed the money be sent to Mori's account. Ex. 4 (Witness interview report). Mori immediately spent more than $50,000 of the funds in the space of a week. Ex. 3.

Law enforcement interviewed the Defendant about the transaction on or about February 5, 2024. Ex. 5 (Interview report). At that time, Defendant stated that he helped people who had "red flags" that prohibited them from getting accounts with legitimate cryptocurrency exchanges. He stated they would send him money and he would buy cryptocurrency and send the cryptocurrency to them.

A federal grand jury returned an indictment charging the Defendant with money laundering offenses in connection with that transaction. He was arrested on June 11, 2025.

At the time of his arrest, Defendant was interviewed. Ex. 6 (excerpts of rough transcript of interview). During that interview admitted he spent more than $50,000 of the funds, including by giving some to his friends. He explained that he believed he had received the funds to use to purchase cryptocurrency, and that he believed he was entitled to a portion as a fee.

## II.    The Defendant Repeatedly Is Reminded of, and Acknowledges Release Conditions

The United States agreed to support his pretrial release, but only on certain conditions. Those conditions included, among others that he (i) not commit a felony, (ii) not engage in transactions on anyone else's behalf, (iii) that he cease working for his business entities, (iv) get other employment, and (v) he notify pretrial services of any transaction receiving or transmitting more than $5,000. Those conditions were imposed by a magistrate judge in the Southern District of New York on June 11, 2025.

[REDACT FROM PUBLIC FILING PURSUANT TO 18 U.S.C. § 3153(c)(1)]:

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

██████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

████████████████████████████████████

Defendant subsequently applied to the Southern District of New York to modify his

conditions to allow him to continue to work for his entities. Ex. 7 (Application). He made certain

outlandish claims about his entities, such as that one of the businesses had a $1 billion contract

with the government of the Ivory Coast. The government notified the Defendant that it did not

believe his businesses were legitimate. *Id.* The Southern District of New York denied his motion,

without prejudice against making the motion in the District of Utah. The Defendant has never

made any such motion in the District of Utah.

The Defendant appeared in the District of Utah, where these conditions were reimposed.

They were later adopted and re-imposed by Magistrate Judge Romero in the District of Utah.

ECF 23. Defendant made no request to modify those conditions, although he did apply to modify

the permitted area of travel. ECF 13.

### III.    Defendant Continues Operating Exseedingly Group in Violation of Conditions

A. Probable Cause that Exseedingly Group Is Operating in Violation of Multiple Federal
   Statutes

The United States has previously secured a warrant based upon findings of probable

cause that Mori was operating Exseedingly Group in violation of multiple federal criminal

statutes. *See* Ex. 8 (affidavit from warrant application). Those facts are set forth in more detail in the application.

Here follows an abbreviated overview of facts already set forth in that application. Essentially, Mori promised investors they could make anywhere from 20% to 500% returns *per month* by investing in Exseedingly Group. He told them that their invested funds served as security when he brokered cryptocurrency-for-cash transactions through the Exseedingly Group business. He claimed he was moving large amounts of cryptocurrency-for-cash and earning anywhere from 1% to 10% in commission for these transactions.

He made the following misrepresentations, among others, to convince investors that he brokered cryptocurrency transactions with sufficient frequency and volume to support those returns:

- His largest transaction was an exchange of $100,000,000 for 1,000 bitcoin;

- He was conducting a couple large transactions per day;

- He had complete control of the funds and could ensure funds were not lost because the brokered transactions went through his trezor wallet;

- He had access to a market of billions of dollars of cryptocurrency exchanges;

- He had received more than $67 million in investment from his top eight investors alone.

Investigators have reviewed his trezor wallets and found these representations to be untrue. An analysis of the active trezor wallet (the other reflects no activity in recent years) shows that, from March 8, 2022 to June 9, 2025, the wallet *received* no more than 15.76191923 bitcoin total in approximately 221 transactions, with a total value of $1,387,291.06. Ex. 9. The total bitcoin *sent* from the wallet was 15.32520481, worth a total of $1,321,141.45, in 202

9

transactions. Ex. 10. In other words, the trezor data indicates that multiple of the representations above were false: he had never received or transmitted 1,000 bitcoin; he was not conducting multiple transactions a day; and the transactions were not large. The largest single bitcoin receiving transaction was approximately 2.37 bitcoin. The largest sending transaction was 1.57 bitcoin, not 1,000.

In addition, Investigators determined as a matter of mere math that, assuming all of the transactions on the trezor from February 20 through May 14, 2025 were part of Mori's cryptocurrency-for-cash broker business, his maximum commission could have been no more than about $219,000. Yet, from the investor funds taken into Exseedingly, he transferred $959,000 to other accounts he controlled, in the names of Global Office Group and Trusted Transportation Group. Ex. 8 at ¶¶ 73-78.

Investigators have also obtained access to financial records for Mori's entities, which indicate that these representations were false. From February 2025 to June 2025, the total deposits into Joseph Mori's business accounts at Santander bank were not $67 million, but approximately $11,500,000. Ex. 11-13 (Santander statements for Exseedinlgy Group, Trusted Transportation Group, and Global Office Group).

B. Defendant Uses His Other Entities in the Exseedingly Scheme

    1. Trusted Transportation Group, Inc.

Defendant used Trusted Transportation Group to collect funds from investors, to transmit "Ponzi payments" to investors, and to launder proceeds of his investment scheme.

He used Exseedingly to collect funds from investors by credit card. In a townhall meeting with Exseedingly investors in January, Mori indicated they could invest in Exseedingly by charging their credit card to Trusted Transportation Group, Inc. Ex. 14.  Several investors who

have been interviewed have similarly confirmed that they invested by credit card, which was

billed through Trusted Transportation Group.

The funds from the Trusted Transportation Group were sometimes used to purchase

trucks, rather than as security for a cryptocurrency exchange.

2.  Global Office Group

Defendant also used Global Office Group to obscure the destination of the investors'

funds. An attorney who was responsible for distributing investment proceeds indicated that all

the funds he received and sent in his IOLTA account were for that purpose. He was directed to

send $100,000 to Global Office Group's Lead Bank account.  Exseedingly also transferred

approximately $754,800 to Global Office Group directly from Exseedingly's Santander account.

C.  Defendant Continues to Operate Exseedingly and the Related Entities After His
    Arrest

After his arrest, Defendant was released on conditions that he not conduct transactions on

others behalf—the very activity he told investors was driving their profits—and that he not work

for Exseedingly or his other entities, but that he get a real job.

Despite this, he continued to accept investments in Exseedingly. One interviewed

investor confirmed that he made multiple investments in Exseedingly after June 11, 2025. This

includes two investments of $50,000 each on June 23 and June 24, 2025, as well as a $7,000

investment on June 25, 2025. He provided a screenshot of these transactions showing the wire

information clearly indicated these were investments (i.e. "Invest 10121 in quarterly plan"; "For

3 month quarterly plan"; "For 3 month investment"). Ex. 15.  These match up with transactions

listed in the bank statements.

Mori also continued to update and solicit investments through the Exseedingly website. On July 10, 2025, the website advertised that his top eight investors had all invested more than $3.7 million, and more than $67 million collectively. He continued to offer returns of 70% per month for smaller investments, and he offered 600% per two months for investments of $1,000,000 or more. He indicated he had received an investment of $10,000 in July (which was in excess of the transaction size requiring notice to pretrial services).

The Exseedingly bank accounts (and the accounts for his other entities conducting Exseedingly business) also reflect significant transaction volume while on pretrial release. Indeed, these records show dozens and dozens of transactions in excess of $5,000 in these accounts, totaling more than $1 million. Mori was the only signatory.

## ARGUMENT

### I.    Defendant Committed Wire Fraud on Pretrial Release

The facts proffered above present probable cause to believe Mori continued committing wire frauds while on pretrial release. The elements of wire fraud require evidence that (1) defendant devised a scheme or artifice to defraud or to obtain money or property by false representations, (2) the defendant acted with specific intent to defraud; (3) the defendant used interstate wire communications or caused another person to use interstate wire facilities to carry out the scheme; and (4) the scheme employed false or fraudulent pretenses or representations that were material.

The facts proffered above would convince a reasonably prudent person that Defendant Mori devised a scheme to obtain money from Exseedingly investors by making false representations about the scope and volume of his business; that he intended to deceive his investors; that he caused investors to transmit interstate wires in furtherance of the scheme; and that his misrepresentations about the scope and volume of his business were material to

12

investors. That was the very basis on which he could supposedly promise such extravagant returns.

## II.      Defendant Violated the Transaction Notification Requirements

Mori also violated the transaction notification requirement. It is anticipated that he will admit to two alleged violations of this requirement. Upon such admission, the United States will dismiss the other two allegations.

## III.     There Is No Combination of Conditions that Can Prevent Defendant Committing More Crimes on Release

The four relevant factors here indicate that there is no combination of conditions that can ensure the safety of the community. As for the nature and circumstances of the offense, the Defendant's charge arises out of conduct while he was on supervised release. The violations at issue here occurred while he was on supervised release and pretrial supervision. The defendant conduct makes clear that he understood these conditions: he tried to get them removed.

The weight of the evidence that Defendant will likely continue is significant.  He was already on supervision. He violated the his pretrial release conditions on more days than he observed them. It is plainly set forth in bank statements.

The defendant's history indicates that he is likely to continue to violate. He is more likely to take more serious measures to avoid getting caught than he is to actually stop violating.

The danger his offense poses is serious. He has moved millions of dollars through multiple layers of accounts. He has used both offshore accounts and a mixture of money laundering methods, including layering and converting the funds into vehicles. He uses sophisticated technological means to move money, including cryptocurrency and trezor wallets. And he has attempted to intimidate his victims and witnesses, by telling them that if they take any legal action against him, they will lose their money.

## CONCLUSION

The United States respectfully submits that the magnitude of Defendant's violations indicates that he is an unmanageable risk to the community. He should be detained pending trial.

Dated: October 10, 2025                  Respectfully submitted,

                                            FELICE JOHN VITI
                                            Acting United States Attorney

                                            */s/Carl D. LeSueur*
                                            CARL D. LESUEUR
                                            Assistant United States Attorney

I certify that an unredacted copy of this memorandum of law was served on opposing counsel by attaching a copy to an email to ijaroslaw@ekjnlaw.com and jsetness@fabianvancott.com on October 10, 2025

                                            */s/Carl D. LeSueur*